**Michael GOINS, Petitioner-Appellee,**

v.

**David McKEEN, Supt., Respondent-Appellant.**

No. 79-3052.

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1979.

Decided Sept. 20, 1979.

Richard David Drake, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellant.

Jerry Weiner, Thomas H. Nagel, Columbus Ohio, for petitioner-appellee.

Before EDWARDS, Chief Judge, KEITH, Circuit Judge, and BROWN, District Judge.*

KEITH, Circuit Judge.

This case is before the Court upon the appeal of respondent-appellant, David McKeen, from a judgment of the United States District Court for the Southern District of Ohio, Eastern Division, granting petitioner-appellee, Michael Goins, habeas corpus relief pursuant to 28 U.S.C. § 2254. We affirm Judge Kinneary's decision.

A Franklin County, Ohio Grand Jury indicted petitioner-appellee for murder, in violation of Ohio Rev.Code § 2903.02,[1] and felonious assault, in violation of Ohio Rev. Code § 2903.11.[2] The victims were Anton and Antonio Bland, the seventeen-month-old twin sons of Yvette Bland, a woman, who, along with her two sons, had lived with petitioner-appellee since the middle of October, 1974. At the arraignment, in February, 1975, petitioner-appellee entered pleas of not guilty and the cause came on for jury trial.

---

* The Honorable Bailey Brown, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation.

1. Ohio Revised Code; § 2903.02 provides:
§ 2903.02 Murder.
(A) No person shall purposely cause the death of another.
(B) Whoever violates this section is guilty of murder, and shall be punished as provided in section 2929.02 of the Revised Code.

2. Ohio Revised Code § 2903.11 provides:
§ 2903.11 Felonious assault.
(A) No person shall knowingly:
(1) Cause serious physical harm to another;
(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordinance as defined in section 2923.11 of the Revised Code.
(B) Whoever violates this section is guilty of felonious assault, a felony of the second degree.

The Goins trial commenced on April 28, 1975.[3] On April 29, 1975, the second day of trial, an article about the case appeared in the Columbus Citizen Journal, a local morning newspaper. The articles stated in pertinent part:

A 21 year old unwed mother told in Common Pleas Court Monday of the death of one of her 17 month-old twin sons and the injury of another last November 1 in the apartment of Michael Edwin Goins, 23. Goins is on trial on charges of murder and felonious assault before Judge George Tyack. *JUDGE TYACK ruled Monday morning that Goins did not have an agreement with police or the prosecutor's office to plead guilty to a lesser offense than murder.* He also held that statements made by Goins to police before his arrest on the charges were admissible in court. *Defense attorney Jerry Weiner maintained Goins was promised he could plead guilty to a less serious charge when he testified as a prosecution witness in the aggravated murder trial of James Weind, who was convicted in the Dec. 15 slaying of Mrs. Hermalee Ross of Hilliard.* [Emphasis added].

Prior to commencement of the second day of trial, the court was informed that the above newspaper article had appeared in the local morning paper. Upon convening court, the trial judge immediately inquired of the jury en banc whether any of the jurors had read the article. Four (4) jurors responded that they had. The court then asked the four (4) jurors whether anything which they had read would affect their judgment in the case and whether they would decide the case strictly upon the evidence presented in the courtroom. The jurors each assured the court that they would. The court then asked defense counsel if he would care to make any inquiries. Goins' counsel chose not to exercise the court's invitation to conduct a voir dire examination of the jury, either en banc or individually; nor did he request that the court make any further inquiry of the jury. However, counsel did make a motion for a mistrial.[4]

**3.** Prior to trial, Goins filed a motion to dismiss the indictment or, in the alternative, to enter a plea to a first degree misdemeanor. Therein, Goins contended that he had entered into a plea bargaining agreement to the effect that, in exchange for information regarding an unrelated murder, he would be permitted to enter a guilty plea to the crime of negligent homicide, a misdemeanor under Ohio law and a lesser included offense of murder. An evidentiary hearing was held on the motion on April 7, 1975. Thereafter, the trial court issued a decision overruling Goins' motion.

**4.** After the judge finished questioning the jurors, the following discussion was held at the bench out of the hearing of the jury.

MR. WEINER: At this time, Your Honor, I would move for a mistrial.

THE COURT: Do you care to be heard?

MR. SHEWARD: Yes, I do, Your Honor.

I think on the basis of the fact that the jurors indicated that they saw the paper this morning and the fact that they all so indicated that they would disregard that and evaluate this case from the evidence in court and also that they indicated to you on your special instruction that they wouldn't be swayed by anything in the paper, and also on the basis you gave a special instruction, I see no need for mistrial at this time.

There's one more thing I would like to mention before I forget it. That is, I would like the record to reflect that you specifically directed the question to the four, I believe, or five indicated and they all nodded their heads that they would not be influenced by what they saw in the paper.

MR. WEINER: Your Honor, from a practical basis, I think the Court as a trial lawyer well knows that people say things and that it's not necessarily so; and the Court is aware of the part where there had been some plea bargaining in this particular case as to a lesser included offense that we had offered to take. Now, I feel, having read that there would be an indication in their minds that the Defendant was, in fact, guilty.

THE COURT: I don't know of any way that we can insulate people from news agencies and T.V. stations and things of that nature. I'm distressed that part would have been in the paper, but I did ask the four individually if anything they saw or read would in any way affect their decision and would they limit their consideration of the case to what happened in the courtroom; and I was assured the answer to that was in the affirmative.

MR. WEINER: I would also point out, and stand to be corrected—the fact is there are many times I may have been conversing with my client—I don't believe there was an admonition not to read newspapers.

THE COURT: There hasn't been yet, because I was advised that there would be no news

On May 2, 1975, the jury returned verdicts finding Goins guilty of murdering Anton and of maiming Antonio. Goins was sentenced to a term of from fifteen (15) years to life imprisonment for the crime of murder and to a term of from (5) to fifteen (15) years imprisonment for the crime of felonious assault. The court ordered that said sentences be served concurrently.[5] After the Court of Appeals of Franklin County affirmed Goins' convictions and the Supreme Court of Ohio overruled his motion for leave to appeal, Goins filed a petition for a writ of habeas corpus in the federal district court on August 3, 1978.

On December 7, 1978, the district court issued an opinion and order holding that the petition for a writ of habeas corpus was meritorious.[6] On that same day, the court entered a judgment ordering that Goins be released from custody unless the state took action to re-try him within sixty (60) days. On December 19, 1978, respondent filed a notice of appeal and a motion for a Stay of Execution of Judgment. On January 3, 1979, the district court granted a stay of execution pending appeal to and the final judgment of this Court. For the reasons stated below, we conclude that the district court was correct in granting petitioner's application for habeas relief.

The American criminal justice system is firmly grounded on the principle embedded in our Constitution that every person accused of crime is entitled to be tried by a fair and impartial jury of his peers and to be convicted, if at all, on the basis of evidence properly adduced at trial. The Supreme Court has stated:

---

report until the evening paper. I was a bit surprised to see this.

MR. SHEWARD: I would like to point out for the record also that I had no idea this was in the paper. I had no idea until about five minutes before.

MR. WEINER: I'm sure of that. The individual was not even present in the courtroom during the proceedings. I'm not placing anything there.

THE COURT: I can understand the concern. I'm going to have to rely on the integrity of the jurors.

MR. WEINER: We're also saying there is error because of not properly admonishing the Jury insofar as—

THE COURT: I don't think that constitutes error. The Court was not asked to admonish the Jury along those lines. If you felt that was an element, I think maybe you should have mentioned it. I'll admonish them that from this point forward they shall not read or listen to any news media on this point. At this point, I would say I think the motion is overruled.

Upon resuming proceedings before the jury, the court reminded the jurors of it's prior instructions to them not to discuss the case with anyone and admonished them not to read or listen to any news media in reference to the case.

5. The January 1975 Term of the Franklin County Grand Jury also indicted Goins on one (1) count of attempted breaking and entering in violation of Ohio Revised Code Section 2923.02 and on one (1) count of possessing criminal tools in violation of Ohio Revised Code Section 2923.24. Upon trial to the court without a jury, Goins was found guilty as charged in both counts and sentenced to a term of six (6) months imprisonment for the crime of attempted breaking and entering and a term of from one (1) to a five (5) years imprisonment for the crime of possessing criminal tools. The Court suspended execution of sentence as to count one (1) but ordered that the sentence imposed as to count two (2) be served consecutively to the sentence imposed in the present case. The aggregate of Goins' sentence is thus a term of from sixteen (16) years to life imprisonment.

6. More specifically, the district court found that the continuation of trial in the circumstances of this case constituted a denial of due process, the court stating:

The full extent of the prejudice to petitioner is not known because the trial judge did not individually examine the four jurors who had seen the article out of the presence of their fellow jurors. Even if the voir dire had been properly conducted, the Court doubts that a juror who learned of a defendant's attempt to plead guilty could ever impartially determine his guilt. Although the trial judge here tried to negate the effect of the jurors' exposure to the prejudicial publicity by carefully cautioning them that they must render their verdict based solely on the evidence of record, the Court concludes that under the circumstances such a cautionary instruction was insufficient to assure petitioner that he would receive a fair trial by an impartial jury. The probability that despite the cautionary instruction the jurors' impartiality would be undermined by the prejudicial publicity is simply too great for this Court to find that under the totality of the circumstances petitioner received a fundamentally fair trial.

In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. .. . . "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136 [75 S.Ct. 623, 99 L.Ed. 942] . . . . In the language of Lord Coke, a juror must be as "indifferent as he stands unswore." . . . His verdict must be based upon the evidence developed at the trial. . . . This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. . . . "The theory of the law is that a juror who has formed an opinion cannot be impartial." *Reynolds v. United States,* 98 U.S. 145, 155 [25 L.Ed. 244]

*Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961) (Citations omitted).

In order that a jury be deemed impartial, it is not necessary that the jurors be totally ignorant of the facts and issues involved in the case. *Irvin, supra,* at 722–723, 81 S.Ct. 1639; *United States v. Johnson,* 584 F.2d 148, 154 (6th Cir. 1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1240, 59 L.Ed.2d 469, *Monger v. U.S.* 440 U.S. 918 (1979), 99 S.Ct. 1239, 59 L.Ed.2d 469, *Morrow v. U.S.* 440 U.S. 918, 99 S.Ct. 1240, 59

L.Ed.2d 469 (1979); *United States v. Tsanas,* 572 F.2d 340 (2d Cir. 1978), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); *United States v. Haldeman,* 181 U.S.App.D.C. 254, 283, 559 F.2d 31, 60 (D.C. Cir. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *Greene v. State of New Jersey,* 519 F.2d 1356 (3d Cir. 1975) (Per Curiam). The mere exposure to publicity is not sufficient, standing alone, to give rise to a presumption that the defendant will be deprived of his right to be tried by fair and impartial jurors. "Rather, the test is whether any potential juror who has been exposed to publicity 'can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Johnson, supra* at 154, quoting from *Irvin, supra,* 366 U.S. at 723, 81 S.Ct. 1639. And "a defendant who claims he was denied a fair trial because the jury was not sufficiently 'indifferent' generally must sustain that claim 'not as a matter of speculation but as a demonstrable reality.'" *Haldeman, supra* at 60.

However, where the circumstances attending a conviction are inherently prejudicial, a reviewing court will presume a violation of the defendant's constitutional rights.[7] *Haldeman, supra* at 60. Moreover, in cases involving federal convictions, a federal appellate court has the power to presume prejudice and to grant habeas relief under its supervisory powers.[8]

7. Ordinarily, a state habeas petitioner must demonstrate an actual deprivation of his constitutional rights to be entitled to relief. *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976). But as with his federal counterpart, a court may presume a deprivation of the state petitioner's constitutional rights in particularly egregious cases and grant relief. *See Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

8. Respondent contends that the court below erred by applying the presumptive or *per se* prejudice standard set down in *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), in deciding this case be-

cause, while appropriate to federal prosecutions, this standard is inapplicable to state court proceedings. Rather, respondent contends that as this was a state prosecution, it was incumbent upon Goins to demonstrate that actual prejudice to his substantial rights resulted from the jurors' exposure to the newspaper article in order to be entitled to habeas relief.

While respondent's contention that the *Marshall* standard of *per se* or presumptive prejudice is inapplicable in cases seeking habeas relief from state convictions is correct, this fact does not refute the correctness of the district court's decision to grant relief.

The standard to be applied in reviewing state convictions is that a constitutional violation. *See* note 7, *supra.* In *Marshall, supra,* the question was "whether exposure of some of the jurors to newspaper articles about petitioner was so prejudicial in the setting of the case as

The Fifth Circuit recently considered the issue of jury exposure to publicity after the trial has commenced and clearly distinguished the effect of such "during trial" publicity from that of "pretrial" and "overlap" publicity.[9] In *United States v. Williams,* 568 F.2d 464 (5th Cir. 1978), the court found the exposure of a newscast to two jurors in which it was reported that the defendant had been convicted at a prior trial on the same charge[10] sufficient to support a conclusion that defendant had been denied his right to a fair trial by an impartial jury. The court reached this conclusion notwithstanding the fact that the jurors in question stated, in response to an inquiry from the court, that they could disregard the newscast and decide the case solely on the evidence adduced in court.[11]

Principles from the pretrial and "overlap" cases must not be haphazardly applied to cases involving only publicity that occurred during the trial. The "during trial" cases, though fewer in number, contain greater opportunities for prejudice. For example, information reported during the trial seems far more likely to remain in the mind of a juror exposed to it, and he may be more inclined to seek out this information when he is personally involved in the case. . . . Moreover, exposure of potential jurors to news accounts before trial need not result in an aborted proceeding, since the problem can be cured by a continuance or change of venue. If the exposure occurs during the trial, however, the trial judge must separately face the question of whether a fair trial is still possible. Consequently, a stricter standard should be employed in during-trial cases than in pretrial situations.

*United States v. Williams,* 568 F.2d 464, 468 (5th Cir. 1978) (Footnote and article reference omitted).

■ Ordinarily, "[t]he trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial." *Marshall v. United States,* 360 U.S. 310, 312, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959). But where prejudice is "manifest," the court's finding of impartiality must be set aside. *Irvin, supra,* 366 U.S. at 723–724, 81 S.Ct. 1639. We believe that the instant case is one where a deprivation of petitioner's constitutional right to a fair trial by an impartial jury may be presumed from the circumstances and that the court below was correct in granting habeas relief.

to warrant the exercise of [the Court's] *supervisory power* to order a new trial." 360 U.S. at 311, 79 S.Ct. at 1172. (Emphasis added). As the presumption of prejudice in that case was predicated upon the Court's "supervisory power to formulate and apply proper standards for enforcement of the criminal law in federal courts," 360 U.S. at 313, 79 S.Ct. at 1173; rather than the Constitution, the *Marshall* standard is clearly inapplicable to state convictions. *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1978). As the court pointed out in *Williams, supra,* "[it is plain that the *Marshall* rule is considerably broader than the constitutional standard and provides more protection against prejudice." 568 F.2d at 469.

The district court's citation of *Marshall, supra,* in support of its holding was incorrect. However, as we believe that this case justifies the presumption of a constitutional violation, we are of the view that the district court simply relied upon the wrong authority to reach the right result.

9. "Overlap" publicity refers to the "so-called 'media circus' cases" in which there is both pretrial publicity and extensive coverage of the trial itself. *United States v. Williams,* 568 F.2d 464, 468 (5th Cir. 1978).

10. Defendant, along with three others, had been convicted of violating an illiterate maintenance worker's civil rights in contravention of 18 U.S.C. § 242, by beating him. The district court granted defendants' motion for a new trial and defendants were again convicted. On the second day of the second trial, a local television newscast reported that the four defendants had been convicted in a previous trial, but that a new trial—the trial in which the jurors were sitting—had been granted because of "erroneous testimony". From this second conviction, Williams appealed.

11. The court noted that no specific instruction, beyond the court's standard admonition to the entire jury panel not to read, view, or listen to anything about the trial, and to disregard everything not heard in court, had been requested or given to the two jurors to disregard the news report of the prior trial.

In reaching this conclusion, we are influenced by a number of factors. First, the news article in question appeared on the second day of trial, after the jurors had been sworn and became aware that they would be deciding this case. This fact causes us to have serious doubts about the jurors' ability to remain impartial and we are not convinced that any resulting prejudice was corrected by the court's standard admonition to disregard everything not heard in court.

Secondly, the newspaper article at issue here contained information which was both inadmissible and strongly probative of guilt. *Williams, supra* at 470–471; *United States v. Solomon*, 422 F.2d 1110, 1118 (7th Cir.), *cert. denied, sub nom. Sommer v. United States*, 399 U.S. 911, 90 S.Ct. 2201, 26 L.Ed.2d 565 (1970). In addition to reporting that petitioner had offered to plead guilty to a lesser offense than murder in this case, the news article also tied petitioner to another aggravated murder case where his testimony apparently helped the prosecution obtain a conviction.

Thirdly, the trial court failed to take all appropriate steps to assure the integrity and dignity of the trial. The trial judge failed to admonish the jury at the beginning of trial not to read news articles or listen to television or radio broadcasts regarding the case.[12] In addition, the court, after learning that four jurors had read the story, questioned them en masse in front of their fellow jurors rather than individually and in chamber.[13] And further, the trial judge failed to make any determination as to whether the four jurors had discussed the article with other jurors.

Finally, the trial judge appears to have based his findings of impartiality exclusively upon the jurors' assurances to the court that they could decide this case upon the evidence properly presented at trial.[14] It is true that the jurors assured the court that they would be impartial. However, we believe that such assurances were insufficient in the circumstances here presented.

In *Marshall, supra,* the Supreme Court overturned the conviction of a defendant during whose trial some of the jurors saw and read newspaper articles alleging that the defendant had a record of two previous felony convictions and reciting other defamatory matters about him. Despite each juror's assurance that he would not be influenced by the news articles and that he could decide the case only on the evidence of record, the Court found that the harm accruing to petitioner as a result of the prejudicial information having been improperly brought before the jurors was substantial enough to require a new trial.[15]

Similarly, in *Williams, supra,* the Court rejected the jurors' assurances of personal disregard of the publicity as insufficient to obviate problems of fairness and to eliminate the harm caused by the news reports. "The fact that the two jurors said they could disregard the newscast and decide the case solely on the evidence adduced in court is not controlling. The effect of exposure

---

12. The trial judge was woefully remiss in not taking steps to prevent exposure of the jurors to the media coverage of this case. This failure constituted a clear contravention of Ohio Rev. Code 2945.34. (GC § 13443–17)

    *Admonition if Jurors Separate during Trial*
    If the jurors are permitted to separate during a trial, they shall be admonished by the court not to converse with, nor permit themselves to be addressed by any person, nor to listen to any conversation on the subject of the trial, nor form or express any opinion thereon, until the case is finally submitted to them.

13. As the Supreme Court has noted, "[n]o doubt, each juror was sincere when he said that he would be fair and impartial to petition-

er, but the psychological impact requiring such a declaration before one's fellows is often its father." *Irvin, supra,* 366 U.S. at 728, 81 S.Ct. at 1645. We cannot ignore the danger that such was the case here.

14. See note 4, *supra.*

15. The Court is aware that the decision in *Marshall, supra,* was predicated upon the Court's supervisory powers rather than the Constitution. *See* note 8, *supra.* However, as this fact goes to the degree rather than the nature of the unfairness necessary to occasion relief, it does not undercut the applicability of the factors justifying relief there to cases employing a constitutional standard of review.

**954**

to extrajudicial reports on a juror's deliberations may be substantial even though it is not perceived by the juror himself, and a juror's good faith cannot counter this effect." *Williams, supra,* at 471. The court noted in a footnote that "[m]oreover, '[i]t is for the court, not the jurors themselves, to determine whether their impartiality has been destroyed by any prejudicial publicity they have been exposed to.' *United States v. Hyde,* 448 F.2d 815, 848 n. 38 (5th Cir. 1971), *cert. denied,* 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972)." *Williams, supra,* at 471 n. 16.

■ While neither the publicity involved nor the jurors' exposure to it was extensive in this case, we believe that its occurrence during trial and the fact that the article contained information strongly probative of guilt, along with other inadmissible and extremely prejudicial information, rendered the circumstances inherently prejudicial and that a violation of petitioner's constitutional right to trial by an impartial jury may be presumed. *See Gordon v. United States,* 438 F.2d 858, 874 (5th Cir.) *cert. denied,* 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971); *Marshall, supra* at 312–313; *Haldeman, supra* at 61–62. This is particularly so since the trial judge could have prevented the problem by admonishing the jury at the outset not to read news reports about the case. And while the opportunity provided by the court below to defense counsel to pursue voir dire may well suffice in the ordinary case, *see United States v. Giacalone,* 574 F.2d 328, 335 (6th Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978), we hold that it was not enough in the circumstances presented in this case.

For the foregoing reasons, the judgment of the district court is affirmed.