**John W. HANEY, Petitioner-Appellant,**

v.

**James H. ROSE, Warden and The Attorney General of The State of Tennessee, Respondent-Appellee.**

**No. 80–1078.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 24, 1980.

Decided March 4, 1981.

---

John W. Haney, pro se, Bill G. Wilder, Florence, Ky., for petitioner-appellant.

William M. Leech, Jr., Atty. Gen. of Tennessee, William W. Hunt, III, Asst. Atty. Gen., Nashville, Tenn., for respondent-appellee.

Before BOYCE F. MARTIN, Jr., and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

This case is before us on the appeal of John W. Haney from an order of the District Court denying his petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. Haney's sole contention on appeal is that he was deprived of his Fourteenth Amendment right to trial by an impartial jury.

Petitioner was convicted in a Tennessee state court of second degree murder and received a sentence of life imprisonment. The pertinent facts relating to his claim, as described by the District Court, are as follows. On the day of petitioner's trial, before the voir dire and before any jurors had been sworn in, a prospective juror named Evelyn Yell overheard a conversation between two unidentified women in the ladies' restroom. Without referring to the case about to be tried, the two women mentioned that petitioner had killed his wife at some point in the past. Shortly thereafter, during the voir dire, the prospective jurors were questioned about their knowledge of the case. They were asked: "Ladies, do any of you four jurors who have just been recently called know any facts about the case, heard anything about it that would influence in any way?" This question elicited no response from any of the jurors. Later in the voir dire petitioner's attorney asked Juror Yell: "Do you know of any reason why you might not be able to return an unbiased and unprejudiced verdict?" She responded "No." Yell was then seated on the jury which subsequently returned Haney's conviction.

When petitioner's counsel learned from a fellow attorney about the conversation overheard by Yell, he filed a motion for a new trial. There followed a hearing at which Juror Yell gave extensive testimony. It was determined that she had related the content of the conversation to another juror, but apparently not until after the jury deliberation and verdict. The court denied the motion for a new trial.

The Criminal Court of Appeals of Tennessee affirmed petitioner's conviction, and the Supreme Court of Tennessee denied certiorari. Haney then filed a petition for a writ of habeas corpus with the District, the denial of which has resulted in this appeal.

■ Before considering the merits of Haney's constitutional claim, we must first address an issue which neither party raised in his brief. We must determine whether *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), precludes federal habeas corpus review of petitioner's claim. In *Wainwright*, the Supreme Court held that the failure by a defendant to comply with a state's contemporaneous objection requirement constitutes an adequate and independent state ground for affirming his conviction, unless the petitioner can show "cause" and "prejudice" attendant upon his state procedural waiver. 433 U.S. at 87, 97 S.Ct. at 2506.

On direct review of Haney's conviction, the Tennessee Court of Criminal Appeals denied his claim on the merits and observed:

Finally, we note that the record in this case suggests a waiver of the issue on appeal. In addressing the trial judge at the hearing on the motion for a new trial, one of the defense attorneys stated that *"immediately prior to the beginning of the trial, possibly before the juror was even seated,* she informed me that she had overheard a discussion in a restroom with some women who said that Mr. Haney had, apparently, killed someone several years ago, and had been ... guilty of essentially the same crime" (emphasis added). The defendant's failure to bring this matter to the trial judge's attention prior to the swearing of the jury or the commencement of trial, if known to him or to his attorney at either of those times, would certainly have the effect of pre-

venting later objection to the juror on the grounds of bias.

App. at 25–26.

We hold that our review of petitioner's constitutional claim is not precluded by *Wainwright*, regardless of whether the waiver of that claim was a substantial basis of the state court's decision. *See Hockenbury v. Sowders*, 620 F.2d 111, 115 (6th Cir. 1980). The reason for this holding is that it is manifestly clear from the record before us that, contrary to the opinion of Tennessee Court of Criminal Appeals, petitioner did not learn until after the trial that Juror Yell had overheard the conversation regarding petitioner's prior criminal act. As a result, petitioner's objection to her presence on the jury on that ground could not have been waived.

The Court of Criminal Appeals' conclusion that petitioner had waived his objection is based on the above-quoted excerpt from the hearing transcript. Read literally and in isolation, that portion of the transcript does indicate that a waiver of the claim occurred. However, at the same hearing counsel for petitioner made the following statement regarding Yell's overhearing the conversation:

> [It] was brought to our attention by a fellow member of the bar, who stated that this discussion did take place, and he thought we should know about it. We then contacted this particular juror and she said that, in fact, it had taken place, and that she did have some prior knowledge.

App. at 162. The District Court's recitation of the facts indicates unambiguously that Haney's attorney learned of the overheard conversation *after* the trial. Respondent, far from objecting to the District Court's account of the facts, specifically adopted it in his brief on appeal. Under these circumstances, we must conclude that the Tennessee court's finding of a procedural waiver rested upon a misinterpretation of the hearing transcript. We are confident that we may disregard that finding, as the District Court and both parties have done, without violating the principles of federalism which underlie the *Wainwright decision.* 433 U.S. at 81, 97 S.Ct. at 2503.

■ We now turn to the merits of petitioner's claim. It is well established that a state prisoner's claim that he was denied the right to a trial by an impartial jury may be considered by a federal court on habeas review. *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). There is a critical distinction, however, between the standard to be applied in considering such a claim and the standard applicable when the same claim is raised by a federal prisoner. Defendants challenging federal court convictions benefit from the principle underlying the Supreme Court's decision in *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959): jurors who have learned from news sources of a defendant's prior criminal record are presumed to be prejudiced. *Murphy v. Florida*, 421 U.S. 794, 798, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975). That principle, however, was expressly based on the supervisory power of the Supreme Court to articulate standards for the enforcement of the criminal law in the federal courts, *Marshall, supra*, 360 U.S. at 313, 79 S.Ct. at 1173, and is not constitutionally compelled. *Murphy, supra*, 421 U.S. at 797, 95 S.Ct. at 2034.

■ When a habeas petitioner is attacking a state court conviction, his claim must be decided in accordance with the constitutional standard of fairness. Federal courts will not presume unfairness of constitutional magnitude in the absence of particularly egregious circumstances. *Goins v. McKeen*, 605 F.2d 947, 951 n.7 (6th Cir. 1979); *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1978); *Murphy v. Florida, supra*.

In *Goins v. McKeen, supra*, this Court, in reviewing the due process claim of a state habeas petitioner, found the circumstances surrounding his conviction to be so inherently prejudicial that a violation of his constitutional right to trial by an impartial jury could be presumed. 605 F.2d at 954. In that case the petitioner had been convicted of murder and felonious assault. On the morning of the second day of his trial, a

prejudicial article appeared in a local newspaper. It recounted the defendant's unsuccessful efforts to convince the trial judge that a plea agreement existed, whereby the defendant would plead guilty to a less serious charge in exchange for testifying for the prosecution in another murder case. Before reopening the trial on the second day, the court asked the four jurors who had read the article whether it would affect their judgment in the case and whether they would decide the case strictly upon the evidence presented in the courtroom. The jurors all assured the court that they would base their decisions solely upon the evidence presented. The defendant's motion for a mistrial was denied. The trial continued and the defendant was convicted.

In affirming the District Court's grant of habeas relief, we held:

> While neither the publicity involved nor the juror's exposure to it was extensive in this case, we believe that its occurrence during trial and the fact that the article contained information strongly probative of guilt, along with other inadmissible and extremely prejudicial information, rendered the circumstances inherently prejudicial and that a violation of petitioner's constitutional right to trial by an impartial jury may be presumed.

*Id.* at 954.

We agree with the District Court that the case before us is distinguishable from *Goins* and that juror prejudice cannot be presumed here. First, Juror Yell was exposed to the prejudicial information before the trial had begun. We held in *Goins* that a stricter standard should be applied when such information is obtained during trial than in cases in which it is obtained prior to trial. 605 F.2d at 952, citing with approval *United States v. Williams*, 568 F.2d 464, 468 (5th Cir. 1978). Although the significance of this distinction is diminished by the fact that Juror Yell overheard the conversation on the morning of the trial, it is also true, as the District Court pointed out, that petitioner's attorney had an opportunity before the swearing-in to question the juror about any knowledge she might have had.

A second and more important distinction between *Goins* and the present case is that the information overheard by Juror Yell, though inadmissible, was not nearly as probative of petitioner's guilt in the matter being tried. By contrast, the jurors in *Goins* learned during trial that the defendant had offered to plead guilty to a lesser offense in lieu of proceeding to trial. Finally, it is significant, though not dispositive, that only one juror overheard the conversation in question.

We cannot conclude on the facts of this case that the circumstances surrounding petitioner's conviction were inherently prejudicial. The nature of the prejudicial information in *Goins* and the timing of its dissemination to the jurors place that case squarely within the line of Supreme Court decisions which have overturned state court convictions obtained in a "trial atmosphere that had been utterly corrupted by press coverage." *Murphy v. Florida, supra*, 421 U.S. at 798, 95 S.Ct. at 2035; *Dobbert v. Florida, supra*, 432 U.S. at 303, 97 S.Ct. at 2303. *See Irvin v. Dowd, supra; Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). As the Supreme Court observed in *Murphy*, however, that line of cases "cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process." 421 U.S. at 799, 95 S.Ct. at 2035. *See also United States v. Phillips*, 630 F.2d 1138 (6th Cir. 1980).

Since we cannot presume that petitioner was deprived of due process, we must examine the record for any indications that his trial might not have been "fundamentally fair." *Murphy, supra*, 421 U.S. at 799, 95 S.Ct. at 2035.

■ "The constitutional standard of fairness requires that a defendant have 'a panel of impartial, "indifferent jurors." ' *Irvin v. Dowd*, 366 U.S. at 722 [81 S.Ct. at 1642]."

*Murphy, supra,* [421 U.S.] at 799, 95 S.Ct. at 2035. It is not necessary that the jurors be totally ignorant of the facts and issues involved. *Irvin, supra,* at 722, 81 S.Ct. at 1642.

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. (citations omitted).

*Id.* at 723, 81 S.Ct. at 1642. *See also United States v. Johnson,* 584 F.2d 148 (6th Cir. 1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1239, 59 L.Ed.2d 469 (1979).

During the voir dire, Juror Yell was asked if there was any reason she might be unable to return an unbiased and unprejudiced verdict. She answered "No." At the hearing after the trial, she indicated that the conversation she overheard had no bearing on her decision. Although a juror's assurance of impartiality is not dispositive of petitioner's rights, a trial judge's finding of impartiality should be set aside only upon a showing that prejudice is manifest. *Irvin, supra,* 366 U.S. at 723, 81 S.Ct. at 1642. We hold that no such showing has been made here.

The significant facts in this case are analogous to those in *Murphy, supra.* In that case, a state prisoner challenged a robbery conviction handed down by a jury which was aware of the defendant's prior convictions. Those prior convictions included murder, conspiracy to transport stolen securities, and the celebrated theft of the "Star of India" sapphire from a New York museum. The Supreme Court affirmed the denial of habeas relief. It noted that the voir dire of the jurors divulged no hostility toward the defendant which would suggest a partiality that could not be laid aside. The Court added that the general atmosphere in the community and courtroom was not at all inflammatory. 421 U.S. at 801–03, 95 S.Ct. at 2036–37. We find the same to be true in this case.

In summary, we cannot conclude that Haney did not receive a fair trial. He has failed to show that the setting of the trial was inherently prejudicial or that the knowledge obtained by Juror Yell permits an inference of actual prejudice. *Id.* at 803, 95 S.Ct. at 2037. Accordingly, the judgment of the District Court is affirmed.