David L. **GAMBILL**, Petitioner,

v.

R. C. **MARSHALL**, Supt., Respondent.

**No. C–1–81–603.**

United States District Court, S. D. Ohio, W. D.

Feb. 19, 1982.

Elizabeth Manton, Asst. Public Defender, Ohio Public Defender Commission, Columbus, Ohio, for petitioner.

Richard David Drake, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## ORDER

SPIEGEL, District Judge.

Petitioner, who is currently incarcerated at the Southern Ohio Correctional Facility at Lucasville, Ohio, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is before the Court on the petition and memorandum in support (doc. 2) and the return of writ (doc. 6). Petitioner was granted leave to proceed *in forma pauperis* and is represented by counsel.

Petitioner was indicted during the January 1979 term of the Scioto County Grand Jury for two counts of aggravated murder in violation of Ohio Revised Code § 2903.01. Petitioner pleaded not guilty and was tried by a jury. The jury found petitioner to be guilty as charged. On April 19, 1981, the trial court sentenced petitioner to a term of life imprisonment on each count, the terms to be served consecutively. *State v. Gambill*, Nos. CR–79–27 and CR–79–28 (Scioto County C. P. April 19, 1979).

Petitioner appealed his convictions to the Court of Appeals for the Fourth Appellate District of Ohio, alleging seven assignments of error, including the trial court's refusal to grant a change of venue and the trial court's refusal to examine prospective jurors individually. The Court of Appeals overruled each assignment of error and affirmed petitioner's convictions. *State v. Gambill*, No. CA–1267 (Scioto County Ct. App. January 16, 1981).

Petitioner then appealed to the Supreme Court of Ohio, raising three propositions of law including the trial court's refusal to change venue and to individually examine jurors. That Court *sua sponte* dismissed the appeal for the reason that it presented no substantial constitutional question. *State v. Gambill*, No. 81–226 (Ohio S.Ct. March 31, 1981).

Petitioner is now before this Court asserting as grounds for his petition that, due to the extensive, inaccurate and inflammatory publicity regarding the murders with which he was charged, coupled with the trial court's refusal to change venue and to individually examine prospective jurors, he was not able to obtain a fair and impartial jury and thereby was denied his right to a fair trial in violation of the Fourteenth Amendment to the United States Constitution. Since petitioner pursued these issues on appeal to the highest court of the State of Ohio, he has exhausted his state remedies. *Keener v. Ridenour*, 594 F.2d 581 (6th Cir. 1979). Thus, petitioner is entitled to seek habeas corpus relief on the questions presented. 28 U.S.C. § 2254(b)(c).

This Court has carefully reviewed the record which reflects that there had been initial publicity about the murders in which a newspaper had reported inaccurately that the two victims had been tortured for several hours prior to their deaths. In addition, there had been extensive media coverage and community rumor regarding the crimes. For this reason, defense counsel, prior to trial, moved the court for a change of venue or alternatively for sequestration of the jury and for individualized voir dire of jurors when requested. Defense counsel sought to have prospective jury members examined outside of the presence of the others in order to be able to question each as to the publicity and rumor he or she had heard without exposing others to information to which they might not otherwise have had access. Counsel told the court that he would be questioning the prospective jurors regarding their knowledge of the inaccurate newspaper account and those who had no prior knowledge of it could become tainted.

The trial judge overruled the motions for sequestration and individual examination prior to voir dire, but stated that he would consider these alternatives if it came to the point that he felt jurors would be prejudiced by the events which occurred. The judge reserved his ruling on the motion to change venue, noting that the publicity about the matter had occurred some time ago. Not knowing how many people were aware of it, the judge stated that he would wait to rule until after he had talked to the prospective jury members.

The voir dire examination was quite lengthy. The court conducted much of the initial examination of the jurors. Without going into the details of the newspaper article, he instructed the proposed panel members that news media reports were hearsay and quite often inaccurate, and he asked each juror if he or she could disregard prior news media accounts he or she had heard and decide the case solely on what was presented in the courtroom. All members of the venire had some prior knowledge of the case due to media coverage and community conversation. The judge excused for cause any juror who indicated in any way that he or she might not be able to be fair and impartial. All those not excused for cause stated that they would be able to disregard what they had previously heard about the case and accord the defendant the presumption of innocence.

Counsel also questioned the prospective jurors at length, with defense counsel probing into the details of what each had heard about the matter. One juror who indicated that he had personal knowledge of the bodies of the two victims was voir dired individually in chambers. Many jurors indicated that they had heard some of the details of the inaccurate newspaper report. After the defense had exhausted all of its peremptory challenges and objected to the entire panel for cause, which objection was overruled, the jury was selected. At that time, defense counsel renewed his motion for a change of venue. The trial judge denied the motion stating:

> And I think I stated that we would reserve a ruling on that until we could see if we could pick a jury and I really feel we got a jury that can be objective and so at this time I'll overrule the motion for a change of venue.

Petitioner argues that, despite the fact that the twelve persons and two alternates who were impaneled as jurors all agreed they could disregard what they had heard previously and consider the petitioner's case on the evidence they would hear in the courtroom while according petitioner a pre-sumption of innocence, the "pervasive community prejudice" made their ability to do so impossible. Petitioner claims that the small community in which the murders occurred, the media coverage of the case with which everyone in the prospective panel was familiar to some degree, and the community rumor and comment which had occurred regarding the case, are evidence of a pervasive community prejudice and are apparent from the record.

It is true that it appears from the record that the community from which the venire was drawn was small. Many people knew or knew of the victims and/or the alleged perpetrators through contacts with them or their relatives or friends. Everyone who was voir dired had heard some details of the case. Many said that they would be unable to put their feelings aside or disregard what they had heard and that they could not be fair and impartial. And, all of the venire who had not previously heard the details of the inaccurate newspaper report were exposed to them during the course of the voir dire of other members of the panel.

However, the trial judge meticulously instructed the jury at every opportunity regarding the possible inaccuracy and hearsay nature of media reports, and the prospective jurors heard about the newspaper article in this context. Also, the answers of the majority of the panel indicated that while they had heard something about the details of the murders, they knew little or nothing about any involvement on petitioner's part. It also appears that there was initial publicity about the crime but that there had been no publicity about the case. Since all of the jurors who were eventually impaneled stated that they could disregard what they had heard and render a fair and unbiased verdict, the issue for this Court is whether bias and prejudice on the part of the jury in this case can be inferred from the circumstances.

Petitioner relies primarily on the cases of *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) and *Goins v. McKeen*, 605 F.2d 947 (6th Cir. 1979) for the proposition that prejudice must be inferred. How-

ever, both of those cases are readily distinguishable from the instant one.

In *Irvin*, the prejudice was inferred as a result of a continuous barrage of pretrial publicity which lasted for six or seven months immediately prior to trial and which focused on the defendant. On the second day of voir dire, the newspapers published the story that the defendant had confessed his guilt. This unrelenting publicity, directed at the defendant, coupled with the fact that eight of the twelve jurors on the panel professed a belief that the defendant was guilty before hearing any testimony, compelled an inference that the jury had been prejudiced and could not be fair and impartial.

*Goins* involved publicity characterized as "strongly probative of guilt" which occurred while the trial was in progress which four of the jurors had seen. The court inferred prejudice but was careful to distinguish between the prejudicial impact of such publicity during trial as opposed to pretrial.

In the instant case, the publicity which occurred was neither so continuous nor unrelenting. It happened sometime prior to trial and did not extend up to the time of the trial or occur while the trial was in progress. The publicity which did occur was directed toward the crime and did not focus on petitioner as the perpetrator. Moreover, all of the jurors impaneled represented, under oath, that they would be able to accord petitioner the presumption of innocence to which he was entitled. The trial judge gave meticulous attention to any possible juror bias or prejudice and determined that he was satisfied that the jury finally impaneled could be objective. A trial judge's finding of impartiality should be set aside only upon a showing that prejudice is manifest. *Haney v. Rose*, 642 F.2d 1055 (6th Cir. 1981).

Under the totality of the circumstances, we find neither that prejudice was manifest nor that prejudice can be inferred. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Haney v. Rose, supra.* Having determined that constitutional standards of fairness were met insofar as the impartiality of the jury in the instant case was concerned, we find that petitioner's assertion that the jury should have been individually voir dired to prevent possible prejudice is unfounded. Therefore, petitioner having demonstrated no basis for federal habeas corpus relief, the Court denies his petition for a writ. This Court certifies, pursuant to Rule 22(b) Fed.R. App.P., that petitioner has probable cause to appeal.

SO ORDERED.