852 F.2d 569
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry Carl SCHRADER and Furman Calvin Schrader, Petitioners-Appellants,
v.
Joseph C. FOWLER, Knox County Sheriff, and W.J. Michael
Code, Attorney of Tennessee, Respondents-Appellees.
 No. 87-5829.
 United States Court of Appeals, Sixth Circuit.
 July 21, 1988.
 
 Before MILBURN, RALPH B. GUY, Jr., and ALAN E. NORRIS, Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Petitioners appeal the judgment denying their petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. For the following reasons, the judgment of the district court is affirmed.
 
 I.
 
 2
 Larry Carl Schrader and his brother, Furman Calvin Schrader, were convicted by a Tennessee jury of misdemeanor assault and battery and resisting arrest. Each of the defendants received a sentence of eleven months and twenty-nine days for each offense, to be served concurrently, with all but thirty days of each sentence suspended. The convictions arose from an altercation between the brothers and two police officers which occurred on April 12, 1982, in Knoxville, Tennessee. The testimony given by the police officers regarding the events of that evening differed sharply from the stories told by Larry and Furman Schrader who testified in their own behalfs.
 
 
 3
 According to one of the arresting officers, Randy Carman, he was driving in his squad car on the evening of April 12, 1982, when he observed the petitioners wrestling on the sidewalk and exchanging punches. Shortly thereafter, another police officer arrived, Officer Michael Byrd, who assisted Officer Carman in separating the two antagonists. Officer Carman advised Furman Schrader that he was under arrest for disorderly conduct and ordered him to place his hands on the hood of his pickup truck so that he could be searched. While Officer Carman was searching Furman Schrader, Officer Byrd ordered Larry Schrader to place his hands on the rear of the pickup truck so that he too could be searched. Officer Carman testified that during the course of the search, Furman Schrader turned and attacked him. Blows were exchanged and Furman Schrader broke free running across the street. Officer Byrd left his position at the rear of the vehicle in order to assist Officer Carman in apprehending Furman Schrader. While the officers were in the process of subduing Furman Schrader, his brother Larry ran up and attacked the two officers. Both the officers testified that during the course of the melee Larry Schrader had attempted to take Officer Byrd's weapon from his holster. The officers also testified that they had used their night sticks against the Schraders. After a protracted struggle, the officers were finally able to subdue the Schraders with the assistance of two citizens who had stopped to help the police. As the result of injuries received during the fracas, Larry Schrader'sleft eye had to be surgically removed and replaced with an artificial eye. Furman Schrader was treated for a cracked skull and a ruptured eardrum which resulted in hearing loss in one ear.
 
 
 4
 According to the petitioners, they were merely arguing, not fighting, when the officers approached them. Furman Schrader testified that his foot slipped off the curb and he fell while leaning against the pickup truck. Furman claims that Officer Carman then struck him with his night stick knocking him to the ground. Furman Schrader tried to flee but was caught by the officers in the median of the road. Furman Schrader claimed that the officers beat him with their night sticks and kicked him while he was on the ground until he lost consciousness. Furman Schrader adamantly denied that he struck Officer Carman first.
 
 
 5
 Larry Schrader said that he could not see what prompted the dispute which began at the front of the pickup truck; however, he saw his brother staggering across the road and Officer Carman chasing him with his night stick. Larry Schrader testified that he saw his brother fall to the ground in the median after Officer Carman had hit him in the head with his night stick. He also claimed that Officer Byrd had run over to the median and was kicking Furman Schrader as he lay on the ground. Larry Schrader said that he was afraid for his brother's safety and ran to his assistance. Schrader claimed that he asked the officers to stop and grabbed one of them around the shoulders to get his attention. According to Schrader, Officer Byrd then hit him in the eye with the butt of his pistol and later threatened to shoot him. There were no eyewitnesses who could testify as to the events which precipitated the incident.
 
 
 6
 The Tennessee Court of Criminal Appeals affirmed the petitioners' convictions and the Tennessee Supreme Court denied their application for permission to appeal. After exhausting their state remedies, petitioners filed a petition for a writ of habeas corpus with the United States District Court for the Eastern District of Tennessee. The case was referred to a magistrate who issued a report and recommendation recommending that the petition be denied. The district court issued an order accompanied by a memorandum adopting the magistrate's report and recommendation and denying the petition for a writ of habeas corpus. Petitioners appeal from that ruling.
 
 II.
 
 7
 On appeal, petitioners assert that there were six errors committed during the course of their trial which deprived them of their right to due process in violation of the fourteenth amendment to the United States Constitution. First, petitioners contend that the trial judge erred by refusing to accept their proposed jury instructions on the issues of self-defense and defense of another. Second, they claim the judge also erred by refusing to instruct the jury on direct and circumstantial evidence, on the right to disregard impeachment testimony and on the terms "knowingly" and "wilfully" as used in the statute defining the criminal offense. Third, petitioners contend that the prosecutor should not have been allowed to cross-examine them about the sentences they received on prior convictions. Fourth, petitioners also complain that the prosecutor made improper and prejudicial statements during the course of the voir dire by referring to a civil case currently pending between the Schraders and the officers. Fifth, the petitioners claim that the trial court erred by allowing the prosecution to introduce certain evidence relating to the officers' injuries, and to petitioners' prior convictions which had not been revealed by the prosecution until the day of trial. Finally, petitioners contend that the prosecutor made improper remarks during the course of his closing argument, referring to the petitioners' initial refusal to talk to the police. We address each of these issues seriatim.
 
 A. Jury Instruction on Self Defense
 
 8
 We begin our analysis by noting that a petitioner who seeks habeas relief from a state court conviction alleging improper jury instructions has a heavy burden to bear in federal court. It is not sufficient for the petitioner to show simply that the instructions were undesirable, erroneous, or even universally condemned. Wood v. Marshall, 790 F.2d 548, 551 (6th Cir.1986), cert. denied sub nom. Wood v. McMackin, 107 S.Ct. 889 (1987). Rather, the petitioner must show that the allegedly improper instructions "have infected the accused's trial to such a degree as to constitute a clear violation of due process." Id. Accordingly, the trial court's failure to give requested jury instructions generally does not amount to constitutional error. Eberhardt v. Bordenkircher, 605 F.2d 275, 277 n.* (6th Cir.1979). In Henderson v. Kibbe, 431 U.S. 145, 154-55 (1977), the Supreme Court stated:
 
 
 9
 The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.... [The] burden is especially heavy [when] ... [the] claim of prejudice is based on the failure to instruct.... An omission, or incomplete instruction, is less likely to be prejudicial than a misstatement of the law.
 
 The Supreme Court has also stated:
 
 10
 [T]he failure to give a requested instruction ... must be evaluated in light of the totality of the circumstances--including all the instructions to the jury, arguments of counsel, whether the weight of the evidence was overwhelming and other relevant factors--to determine whether the defendant received a constitutionally fair trial.
 
 
 11
 Kentucky v. Whorton, 441 U.S. 786, 789 (1979).
 
 
 12
 In support of their argument that their due process rights were violated by the court's failure to instruct on the self-defense issue, petitioners cite to a decision rendered by the Court of Appeals for the Eighth Circuit in the case of United States ex rel. Means v. Solem, 646 F.2d 322 (8th Cir.1980). In that case, the defendant was convicted of starting a riot to obstruct justice stemming from a protest demonstration at the trial of several American Indians. The charge resulted from an altercation with members of the police tactical squad who attempted to remove the protestors from the Minnehaha County Courthouse in Sioux Falls, South Dakota. The defendant claims that he had acted in self-defense and in the defense of other protestors against the unexpected and excessive force used by the tactical squad during their assault on the courthouse. The trial court, however, refused to instruct the jury on the issue of self-defense because the court found that the defendant and the other protestors had provoked the attack by their refusal to leave the courtroom when ordered to do so by the judge. After exhausting his state remedies, defendant Means filed a petition for habeas corpus with the federal district court in South Dakota. The petition was granted, and the Court of Appeals for the Eighth Circuit affirmed, finding that the trial court's failure to give instructions on self-defense and the defense of others was a denial of the petitioner's right to due process. 646 F.2d at 331-32.
 
 
 13
 In the instant case, the federal district court found that the Tennessee trial judge adequately charged the jury on the issue of self-defense in the petitioners' criminal case. The district court distinguished the decision by the Court of Appeals for the Eighth Circuit in Solem, where the trial court had made it clear that all instructions on self-defense would be disallowed.
 
 
 14
 The instructions given to the jury at petitioners' trial provided in part:
 
 
 15
 Every person has a right to resist an unlawful arrest, and that in preventing such illegal restraint of his liberty, he may use such force as may be necessary. But that is not an unlimited right. "Necessary" is a relative term, depending on the circumstances of each case. Force may not be resorted to or means of resistance adopted which are disproportionate to the effort made to take him into custody. The question as to whether unnecessary and excessive force was employed by the officer making the unlawful arrest, or by the person sought to be arrested illegally, is for you, the jury, as the triers of the facts, to decide under all of the circumstances.
 
 
 16
 Even if you find that a police officer had probable cause to arrest another, an arresting law enforcement officer may use only such force as is reasonably necessary in affecting that arrest under the circumstances. That is to say, an officer who uses more force than is reasonably necessary under the circumstances to affect a lawful arrest commits a battery upon the person arrested and would justify the person being arrested to resist and defend himself.
 
 
 17
 A police officer, merely because of his status as a law enforcement officer, is given no more or less rights to use force in affectuating [sic] an arrest than a private person.
 
 
 18
 If you find in this case that a law enforcement officer used more force than was reasonably necessary under the circumstances to affect the arrest of one or more of the defendants, then the defendants, or either of them, would be justified in acting in defense of such excessive force.
 
 
 19
 (App. 84-85). The district court found that these instructions were sufficient to advise the jury that a person has a right to resist an unlawful arrest or defend himself against excessive force used by an officer to affect a lawful arrest. Accordingly, the district court found that the failure to give the petitioners' requested instruction did not violate their constitutional right to due process.[1]
 
 
 20
 The outcome of the petitioners' criminal prosecution essentially turned on the question of credibility. The officers testified that petitioners had attacked them while they were attempting to effectuate a lawful arrest. On the other hand, the petitioners claim that they had surrendered freely to the officers and were only attempting to defend themselves from the violent unprovoked attack. We find that the instructions set forth above were sufficient to allow the jury to return a verdict of not guilty in the event that they believed the petitioners' version of the fracas. The failure to give that instruction did not infect the entire trial to such a degree that the resulting convictions violated due process. Petitioners clearly set forth their theory of self-defense during the course of their testimony presented at trial and during the closing arguments made by their attorneys. Accordingly, we find that the instructions given to the jury did not violate the petitioners' right to a fair trial as guaranteed by the fourteenth amendment.
 
 B. Other Jury Instruction Issues
 
 21
 Petitioners argue that the trial court's refusal to instruct the jury on direct and circumstantial evidence, the right to disregard the testimony of an impeached witness, and the definitions of "knowingly" and "willful" denied or contributed to denying them a fair trial.
 
 
 22
 We note that the Tennessee Court of Appeals held that, as a matter of state procedural law, the petitioners were not entitled to an instruction on direct and circumstantial evidence because no circumstantial evidence was offered in this case. Furthermore, the court concluded that, as a matter of Tennessee law, the terms "knowingly" and "willful" contained in the statute under which petitioners were charged are words in common usage and do not require a special definition. Finally, the court found that the jury was fully and fairly charged on their right to disregard impeached testimony.
 
 
 23
 In the instant case, the petitioners have failed to show how they were prejudiced by any of these alleged errors. We find that they do not raise issues of Constitutional dimensions cognizable under federal habeas corpus.
 
 
 24
 C. The Use of Prior Convictions in Cross-examination
 
 
 25
 Petitioners contend that they were denied a fair trial when, during the course of their cross-examinations, the trial court allowed the prosecutor, over defense counsel's objections, to inquire about the length of the sentences which the petitioners had received on prior criminal convictions. The Tennessee Court of Criminal Appeals held, as a matter of state law, that "[t]he sentence received is part and parcel of the conviction," and that if any error was committed by the admission of this testimony it was harmless. The scope of permissible cross-examination is clearly a matter of state law. Errors of application of state law, especially with regard to an evidentiary ruling are generally not cognizable in federal habeas corpus claims. Oliphant v. Koehler, 594 F.2d 547, 555 (6th Cir.), cert. denied, 444 U.S. 877 (1979). The exception is where the evidentiary ruling has deprived the defendant of some right or privilege under the Constitution. Combs v. Tennessee, 530 F.2d 695 (6th Cir.), cert. denied, 425 U.S. 954 (1976).
 
 
 26
 On appeal, petitioners argue that the prosecutor's use of this line of questioning was so blatantly improper and unfair that it amounted to prosecutorial misconduct which rendered the trial fundamentally unfair. We find this argument without merit. Without ruling on whether the inquiries made on cross-examination regarding the length of the petitioners' prior sentences were permissible under Tennessee law, we find that such questions did not violate the petitioners' federal Constitutional rights.
 
 
 27
 D. Prosecutor's Reference to Pending Civil Litigation
 
 
 28
 Petitioners also argue that the prosecutor improperly questioned the veniremen during voir dire in asking the prospective jurors whether they would be biased due to the pending civil litigation between petitioners and the arresting officers. Petitioners contended that the prosecutor's comments could have biased the jury against them by creating the impression that an acquittal would have a collateral effect on the pending civil litigation and would result in disgrace and financial loss to the officers involved in the case. We find the petitioners' argument wholly speculative and without merit. The prosecutor's allegedly objectionable comments referring to the pending civil litigation could have just as easily biased the jury in favor of the petitioners since they could have assumed that a conviction on the assault and battery charges would preclude the petitioners from obtaining compensation for their severe injuries. In Goins v. McKeen, 605 F.2d 947 (6th Cir.1979), this court held that a state habeas petitioner who claims he was denied a fair trial because the jury was not sufficiently "indifferent" must prove bias " 'not as a matter of speculation but a demonstrable reality.' " Goins, 605 F.2d at 951 (quoting United States v. Haldeman, 559 F.2d 31, 60 (D.C.Cir.1976), cert. denied sub nom. Ehrlichman v. U.S., 431 U.S. 933 (1977)). In the instant case, petitioners have failed to show any evidence that the jury was biased against them. Accordingly, we find no constitutionally cognizable error stemming from the remarks made by the prosecutor during voir dire.
 
 
 29
 E. The Prosecution's Use of Evidence Not Revealed During Discovery
 
 
 30
 Petitioners claim that they were denied a fair trial by the admission of evidence relating to their prior criminal records and the admission of certain photographs allegedly taken following the fight showing blood on the face of one of the officers. Petitioners contend that they were not informed as to the existence of this evidence until the day of trial, despite the previous discovery requests in which they sought to ascertain the existence of such evidence.
 
 
 31
 It is well settled that there is no federal constitutional right to discovery in a criminal case. Weatherford v. Bursey, 429 U.S. 545 (1977). Moreover, we do not find that the admission of this evidence rendered the petitioners' criminal prosecution fundamentally unfair. Therefore, we find no violation of the federal Constitution.
 
 
 32
 F. Prosecutor's Reference to Petitioners' Pretrial Silence
 
 
 33
 Finally, petitioners contend that their due process rights were violated when the prosecutor made the following comments during the course of his closing argument:
 
 
 34
 I didn't know what the defendants were going to say until they took the witness stand. They have a precious right, which I admire and relish as much as anyone else to remain silent. And they have chosen not to exercise that right in this case. But until they have gotten up here and told you their version of what happened, I--I haven't heard it before....
 
 
 35
 (App. 63). Petitioners rely on the decision in Doyle v. Ohio, 426 U.S. 610 (1976), wherein the Supreme Court held that an accused's post-Miranda silence cannot be used to impeach or discredit an exculpatory explanation offered by him at trial. We find that the oblique references quoted above, although technically improper, were not sufficiently egregious to constitute a violation of the petitioners' rights under the due process clause of the fourteenth amendment. We note that the prosecutor did not directly refer to the petitioners' post-arrest silence but, rather, created the indirect inference that the petitioners had not initially disclosed their side of the story, since the prosecutor claimed that he was unaware of their story until they testified at trial. More importantly, we note the single passing reference made during closing argument is clearly distinguishable from the sharp, repetitive questioning found impermissible in Doyle. As noted by the Court of Appeals for the Fifth Circuit, there must be some prosecutorial focus which highlights a defendant's post-Miranda silence in order to demonstrate prejudicial error. United States v. Davis, 546 F.2d 583, 595 (5th Cir.), cert. denied, 431 U.S. 906 (1977). In the instant case, no rational trier of fact could conclude that the petitioners' exculpatory explanations were discredited or impeached by the prosecutor's remark that he had not previously heard their story. Therefore, the challenged remark "does not come within either the mandate or the sphere of Doyle." See Goudlock v. Marshall, 751 F.2d 865, 871-72 (6th Cir.), cert. denied, 474 U.S. 979 (1985).
 
 
 36
 For all the foregoing reasons, we find that the petitioners were not deprived of their federal Constitutional right to a fundamentally fair trial. Therefore, the judgment of the district court denying the petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 [1]
 It is undisputed that the instruction requested by petitioners was a correct statement of Tennessee law regarding the right to self-defense and the defense of others