UNITED STATES of America,
Plaintiff–Appellee,

v.

Carl A. WARNER, Defendant–Appellant.

Nos. 91–6454, 92–5026.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 9, 1993.

Decided Dec. 2, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 20, 1994.

H.H. Hester, Asst. U.S. Atty. (argued and briefed), Ernest W. Williams, U.S. Atty., Nashville, TN, for plaintiff-appellee.

Karimbumkara Jayaraman (argued and briefed), Memphis, TN, for defendant-appellant.

Before: JONES and NORRIS, Circuit Judges; and JARVIS, Chief District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Defendant–Appellant Carl Anthony Warner appeals his convictions and sentence for various drug-related crimes. He claims that the evidence is insufficient to support his conviction on a drug-related gun charge; that the district court abused its discretion in denying his motion for a new trial; and that the district court was clearly erroneous in determining for sentencing purposes the amount of cocaine for which Warner was accountable. We find that his contentions are meritless and accordingly affirm.

## I. Facts

On November 2, 1990, officers of the Shelby County Sheriff's Office received information that guns and drugs were to be found in Room 149 of the Concord Inn in Memphis, Tennessee. The room was rented in Warner's name. Surveillance Officer Robert Swatzyna noticed a man later identified as Warner leave Room 149, go to a black Saab, retrieve a black bag, and return to the room. A search warrant was obtained, and a SWAT team entered Room 149 where they found Warner and four other men, one of whom was Myron Johnson and another of whom was Chance Allen.[1] The black bag contained one kilogram of cocaine. The five men were arrested.[2]

Johnson told Officer Swatzyna that another two and one-half kilograms of cocaine could be found in Nashville, Tennessee, at Chance Allen's apartment. Johnson mentioned that Todd Hoffman would be guarding the cocaine with a gun that Johnson had seen

earlier that week. The local officers contacted federal Drug Enforcement Administration (DEA) agents. A second warrant was obtained to search Allen's apartment. Upon execution of the warrant, agents arrested Todd Hoffman, who had a long-barrelled, loaded .30–caliber revolver, as well as approximately two and one-half kilograms of high purity cocaine.

Warner, Johnson, and Hoffman were charged with: possessing 500 or more grams of cocaine with intent to distribute (in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2); conspiring to distribute 500 or more grams of cocaine (in violation of Section 841(a)(1) and 21 U.S.C. § 846); and use of a firearm during a drug trafficking offense (in violation of 18 U.S.C. §§ 2 and 924(c)). Johnson and Hoffman entered guilty pleas. Warner proceeded to trial on August 20, 1991.

At Warner's trial, Chris Williams testified that he had known Warner for about five years, and that, in late October 1990, Warner called Williams and asked him to deliver a triple-beamed scale to a motel room. Williams made the delivery, and saw in the room Warner, Johnson, Chance Allen and another man, along with a "long stout cowboy gun" of which Warner was in possession.

Todd Hoffman, appearing as a government witness, testified that, in May 1990, he, Warner, and others got into the business of selling drugs together. They obtained the drugs from Detroit and distributed them in the Nashville area. Between May 1990 and November 1990, Hoffman and Warner were the chief distribution managers that transported and distributed forty-five to fifty kilograms of cocaine. When engaged in these activities, they were generally armed.

Hoffman further testified that, in late October, Warner took a trip, along with Johnson, Allen, and others, from Nashville to Memphis in order to sell drugs. Hoffman

---

* The Honorable James H. Jarvis, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. Sometimes referred to as "Chauncey" and spelled "Channce" in the record.

2. Although there were several loaded guns in the Memphis hotel room, they are not related to the gun charge presently before us on appeal.

stayed at Allen's apartment in Nashville, guarding the cocaine, armed with the .30-caliber revolver with which he was arrested. Hoffman confirmed that his possession of this weapon was not a secret.

Myron Johnson testified that he came to Nashville from Detroit with Hoffman in October 1990. While he was staying at Allen's apartment, he learned of the proposed Memphis trip. There, he helped Warner bag twelve ounces of cocaine, which was weighed using a triple-beam scale. Johnson testified that Warner drove to Memphis in Warner's black Saab, which Warner had purchased two days before the men were arrested in the Concord Inn. Johnson also testified that after he was arrested, he informed the police that they could find two and one-half kilograms of cocaine in Allen's apartment in Nashville, guarded by Hoffman with a revolver.

On August 21, 1991, a jury deliberated and found Warner guilty on all three counts. On December 9, 1991, a sentencing hearing was held. Warner was sentenced to 211 months of imprisonment, to be followed by five years of supervised release. Judgment was entered on December 10, 1991.

Prior to sentencing, on December 6, 1991, Hoffman, by affidavit, recanted prior statements indirectly relating to Warner's case. The affidavit did not exonerate Warner.[3] Yet, on the basis of this affidavit, Warner filed a Motion to Reconsider on December 12, 1991, and a Motion for New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure on December 17, 1991. The Motion for New Trial was denied on January 9, 1992, and the Motion to Reconsider was denied on January 22, 1992.

Warner filed two Notices of Appeal. On December 10, 1991, Warner appealed from "his conviction by a jury and sentence imposed by the court on the 9th day of December, 1991." This was docketed as Case No.

91–6454. On December 19, 1991, Warner appealed "from the final judgment in this cause entered on December 10, 1991." This was docketed as Case No. 92–5026.

## II. Discussion

### A. Sufficiency of the Evidence

On appeal, the standard of review for claims of insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989). Warner argues that, even viewing the evidence adduced at trial in the light most favorable to the government, no rational trier of fact could have found him guilty beyond a reasonable doubt of using or carrying the .30 caliber revolver that was in Hoffman's possession at the time of Hoffman's arrest.

First, Warner argues that there was no direct evidence to establish that the particular gun in question was actually used by Hoffman to protect the cocaine in Nashville. This argument is meritless. What constitutes using or carrying a firearm, for purposes of Section 924(c), has been construed quite broadly by this court. *See, e.g., United States v. Christian,* 942 F.2d 363, 366 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 905, 116 L.Ed.2d 806 (1992); *United States v. Acosta–Cazares,* 878 F.2d 945, 952 (6th Cir.) ("We hold that 'uses' and 'carries' should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions."; keeping weapons readily accessible in apartment found to fall within this construction),

---

**3.** The relevant portion of the affidavit reads:

The whole of my statements against [Terrence Bulger, Gary Odom, and George Ryder] is total fabrication, precipitated by the hope of saving myself and the relentless pressure and badgering of the DEA. The DEA approached me with the names and certain other statements about the defendants. I saw this as an opening and

used it to my advantage to throw the blame off of myself and place it upon my friends and family members, whom I was already upset with because I felt that they were not assisting me as much as I thought that they should. I proceeded to implicate them in crimes that I along with my partner, Carl Warner committed solely on our own.

*cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). In *United States v. Morrow,* 977 F.2d 222, 231 (6th Cir.1992) (*en banc*), *cert. denied,* ── U.S. ──, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993), we held that a defendant violates section 924(c) if a firearm merely "emboldens" the defendant or otherwise serves to facilitate an offense, even if the weapon is not displayed or discharged. Warner admits that the gun was found in Allen's apartment on the living room sofa, certainly readily accessible for drug-related protection. We cannot say that it did not facilitate the conspiracy by emboldening the participants. Thus, viewing the evidence in the light most favorable to the government, we must reject Warner's first sufficiency-of-the-evidence argument.

■ Next, Warner argues that he did not even know of the existence of the .30–caliber revolver and so could not be convicted of using it or carrying it during and in relation to a drug offense. To support his argument, he notes that Hoffman testified that he did not get the gun from Warner. (Hoffman testified that he originally told DEA agents that Warner gave him the gun, but that he had lied to these agents.) Though Hoffman apparently carried the gun during the October 1990, Detroit-to-Nashville drug run, Warner was not with him during the trip. Despite carrying the gun on that trip, Hoffman testified that he did not normally carry the revolver around with him on drug business. Warner argues from this that it is unlikely that he would have known of the existence of the revolver.

The government responds that there was ample evidence showing Warner's connection with and knowledge of the .30–caliber revolver. For example, Williams testified that, in late October 1990, Warner was in possession of a "long stout cowboy gun." Viewing the evidence in the light most favorable to the government, this weapon could have been the .30–caliber revolver. Further, Hoffman tes-

tified that he had originally told the DEA that Warner had given him the gun.

More importantly, Hoffman testified that he and Warner worked closely together to distribute drugs in the Nashville area, and that the two men occupied roughly the same position in the drug distribution network. Hoffman also testified that Warner told Hoffman that Warner was going to Memphis to meet a drug buyer, that Warner would check in with Hoffman when Warner got there and when he was on his way back, and that it was understood between the two men that, while Warner was in Memphis, Hoffman was to guard the cocaine in Allen's apartment. Significantly, Hoffman also testified that there was no secret that he possessed the .30–caliber revolver. Indeed, Johnson testified that he had seen the gun in Allen's apartment during the week before the Memphis bust.

From this evidence, viewed in the light most favorable to the government, a rational juror could determine beyond a reasonable doubt that Warner *at least knew* of the existence of the .30–caliber revolver, and that Hoffman would have it handy to guard the cocaine in Nashville while Warner was in Memphis. A rational juror could also have determined that Hoffman's role in guarding the cocaine while Warner was away was an understanding between Warner and Hoffman to protect their cocaine. Such determinations are sufficient to support a conviction under Section 924(c). *See Morrow,* 977 F.2d at 231.

### B. Motion for New Trial

■ Warner contends that the district court erred by not granting his Motion for New Trial on the basis of newly discovered evidence, namely, Hoffman's affidavit.[4] Although an appeal was pending at the time Warner moved for a new trial, the district court had jurisdiction over the motion. *See United States v. Cronic,* 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 2051 n. 42, 80 L.Ed.2d 657

---

4. The Motion for New Trial was made pursuant to Rule 33 of the Federal Rules of Criminal Procedure, which provides in pertinent part:
   The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.... A motion for a new trial

based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case.

(1984). A denial of a Rule 33 motion for a new trial is an appealable order, as we explained in *United States v. Hatfield*, 815 F.2d 1068, 1073 (6th Cir.1987) (cites omitted):

> Under Rule 33, although the district court may not grant a new trial while an appeal is pending without a remand, the trial court may deny such a motion. Such a denial is an appealable order, and an immediate appeal taken from the denial will be consolidated with a pending appeal taken from the judgment of conviction. Nevertheless, by being a distinct appealable order from which a separate appeal must be taken, an appeal from a Rule 33 motion denial is subject to the requirement that the appeal be taken within ten days from the docketing of the district court's order. Absent an appeal within this time, or an extension from the district court for filing the notice of appeal, this court, being without authority to extend the time for filing a notice of appeal, will lack the jurisdiction to hear the appeal.

On December 10, 1991, Warner filed his Notice of Appeal (No. 91–6454) from "his conviction by a jury and sentence imposed by the court on the 9th day of December, 1991." Warner's Motion for New Trial was filed on December 17, 1991. On December 19, 1991, Warner filed a Notice of Appeal (No. 92–5026) "from the final judgment in this cause entered on December 10, 1991." The Motion for New Trial was denied on January 9, 1992. Warner never filed a separate Notice of Appeal from the denial. Since Warner did not appeal the denial of his Motion for New Trial, we have no jurisdiction to review this claim. *See Hatfield*, 815 F.2d at 1073–74.

### C. The Amount of Cocaine

■ A factual determination of a sentencing judge regarding the amount of cocaine for which a defendant is to be held accountable for sentencing purposes is reviewed for clear error, and need only be supported by a preponderance of the evidence. *United States v. Medina*, 992 F.2d 573, 590 (6th Cir.1993); *United States v.*

*Paulino*, 935 F.2d 739, 756 (6th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992); *United States v. Walton*, 908 F.2d 1289, 1300–02 (6th Cir.), *cert. denied*, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990); *United States v. Moreno*, 899 F.2d 465, 473 (6th Cir.1990). This determination need not be based on cocaine actually seized, but may be based on testimonial evidence of unseized cocaine. *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991); *see also Walton*, 908 F.2d at 1301–02. Estimates will suffice. *Walton*, 908 F.2d at 1302. In making its determination, the district court is not limited to evidence introduced at trial. *Sanchez*, 928 F.2d at 1460.

■ The district court found, based on Hoffman's testimony, that Warner was involved with between five and fifteen kilograms of cocaine.[5] Warner claims that this finding is clearly erroneous. He argues that it was not reasonable for the court to impute knowledge to him regarding the total quantity of drugs involved in the conspiracy. *See Medina*, 992 F.2d at 590–91 ("The trial court found both defendants responsible for the total quantity of drugs in the conspiracy without making the additional finding that it was reasonable to impute knowledge of all of the conspiracy's criminal activity to [defendants]. The guidelines require a finding of reasonable foreseeability with regard to acts and omissions of others in furtherance of the conspiracy. U.S.S.G. § 1B1.3(a)(1)(B) [(1992)]...."); *see also United States v. Perrone*, 936 F.2d 1403, 1416, *clarified on rehearing*, 949 F.2d 36 (2d Cir.1991). *But cf. United States v. Miller*, 910 F.2d 1321, 1327 (6th Cir.1990), *cert. denied*, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991) (including uncharged drug quantities depends on whether the drugs are part of the same scheme or plan).

Warner's argument is without merit. Though Warner suggests that he and Hoffman transacted business on only one occasion, other evidence indicates a more involved business association between Hoffman and Warner. Specifically, Hoffman testified

---

**5.** Under U.S.S.G. § 2D1.1(c)(6), a quantity of cocaine of between five and fifteen kilograms carries a base offense level of 32.

at Warner's trial that he and Warner were in the drug business together from May 1990 to November 1990, both sharing in the responsibility for planning strategy and leading the operation.

The police found one kilogram of cocaine in Memphis and two and a half kilograms more in Nashville. According to Hoffman's and Johnson's testimony, this was part of a five kilogram batch that Hoffman obtained in Detroit in October 1990. Based on Warner's connection with Hoffman and his role in planning on behalf of the conspiracy, if one believes Hoffman and Johnson, then it is reasonable to conclude that Warner knew about all five kilograms of the shipment. Warner's counsel admitted this much at the sentencing hearing.[6] Given the limited scope of our review of factual findings relating to sentencing issues, we cannot say that the district court's finding, which was based on the testimony of Hoffman and Johnson, was clearly erroneous.

### III. Conclusion

For the foregoing reasons, Warner's conviction and sentence is AFFIRMED.

---

6. "We believe that based upon the actual cocaine seized, the offense level should be a 30, which is less than five kilograms. If you believe the testimony, . . . the appropriate level is a 32, which is the five to not more than 15 category." J.A. at 127 (argument of counsel for Warner).