21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lawrence DEAN, Defendant-Appellant.
 No. 93-3722.
 United States Court of Appeals, Sixth Circuit.
 March 29, 1994.
 
 Before: KENNEDY, MILBURN, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 In this case, the issue is whether there was sufficient evidence to support defendant's conviction for use of a firearm "during and in relation to" a drug trafficking crime under 18 U.S.C. Sec. 924(c). For the reasons that follow, we affirm.
 
 I.
 
 2
 The parties agreed to a stipulation of facts during the bench trial of this matter. On September 23, 1992, an undercover policeman, Detective Thomas Strausbaugh, accompanied Ernest Bittner, Jr. to the vicinity of defendant Lawrence J. Dean's residence. Detective Strausbaugh waited while Bittner approached and entered defendant's residence, a home which defendant owned. After a short time, Bittner exited defendant's residence and immediately met with the detective and handed him approximately one-eighth ounce of cocaine powder. On October 1, 1992, this same scene was repeated, but this second time Bittner delivered approximately one-half ounce of cocaine powder to Detective Strausbaugh. Later that day, the police obtained a warrant to search defendant's residence.
 
 
 3
 While executing the search warrant, the police discovered a locked safe in defendant's bedroom. Inside the safe, the police found and seized $1,618.53 cash, a portion of which was prerecorded funds that had been given to Bittner for the purchase of the cocaine powder ultimately delivered to Detective Strausbaugh on October 1, 1992. The police also seized seven ounces of cocaine from the safe. The cocaine was packaged in 33 separate baggies containing one-eighth ounce, one-half ounce, and one ounce portions. Agent Frank D'Alesio of the Bureau of Alcohol, Tobacco, and Firearms discovered an unloaded .32 caliber Armi Tanfaglio pistol on top of the safe. Agent D'Alesio also found a magazine containing five rounds of ammunition on the bedroom etagere, approximately three feet from the pistol. This magazine fit the pistol found on the safe.[1] Behind the etagere, the police found a briefcase containing $24,000 cash. Other items found in defendant's bedroom include a baggie containing approximately seven grams of methaqualone, a digital scale, a package of small plastic baggies, a scale pan, and a mobile pager.
 
 
 4
 Count One of the indictment, returned on November 5, 1992, charged defendant with conspiracy to distribute and to possess with the intent to distribute cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and (b)(1)(C). Bittner and others were charged along with defendant in Count One as conspirators. Count One further charged that it was part of the conspiracy that defendant would use his residence for the distribution and possession with intent to distribute cocaine. Count Four charged defendant and Bittner with knowingly and intentionally distributing cocaine on October 1, 1992, in violation of 21 U.S.C. Secs. 841(a)(1) and (b)(1)(C) and 18 U.S.C. Sec. 2. Count Five charged defendant with knowingly and intentionally possessing with intent to distribute cocaine on October 1, 1992, in violation of 21 U.S.C. Secs. 841(a)(1) and (b)(1)(C). Finally, Count Six charged defendant with using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c).
 
 
 5
 Pursuant to a plea agreement, defendant pled guilty to the conspiracy charge (Count One), the government dismissed Counts Four and Five, and defendant expressly waived his right to a jury trial as to the firearms charge (Count Six). After the parties stipulated to the facts and the content of Agent D'Alesio's proposed testimony, the district court found defendant guilty of the firearms charge. The district court sentenced defendant, and this timely appeal followed.
 
 II.
 
 6
 On appeal, defendant challenges the sufficiency of the evidence supporting his conviction for violating 18 U.S.C. Sec. 924(c). "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.' " United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.) (quoting United States v. Soto, 716 F.2d 989, 991 (2d Cir.1983)), cert. denied, 476 U.S. 1123 (1986). The standard of review for claims of insufficient evidence is " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." Vannerson, 786 F.2d at 225; United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984).
 
 
 7
 Section 924(c)(1) requires a five-year sentence for any defendant who, "during and in relation to any crime of violence or drug trafficking crime[,] uses or carries a firearm." To establish a violation of Sec. 924(c), the government must prove beyond a reasonable doubt that (1) the defendant "use[d] or carrie[d] a firearm" and (2) that the defendant's use or carrying was "during and in relation to" a "crime of violence or drug trafficking crime." Smith v. United States, 113 S.Ct. 2050, 2053 (1993); United States v. Lloyd, 10 F.3d 1197 (6th Cir.1993).
 
 
 8
 Defendant argues that the government did not demonstrate a connection between the pistol and the drug conspiracy that would suffice to establish that the pistol was used "during and in relation to" the drug trafficking crime. On the other hand, the government argues that the proof that the pistol was found in close proximity to the drugs and money was sufficient to show that the pistol was used "during and in relation to" the drug trafficking crime.
 
 
 9
 We hold that in this case the evidence of the strategic positioning and ready accessibility of the pistol was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the pistol was used "during and in relation to" the drug conspiracy. This court has broadly construed the language of Sec. 924(c) "to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.), cert. denied, 493 U.S. 899 (1989); see also United States v. Warner, 10 F.3d 1236, 1238 (6th Cir.1993); Lloyd, 10 F.3d at 1212; United States v. Blankenship, 954 F.2d 1224, 1229 (6th Cir.), cert. denied, 113 S.Ct. 288 (1992). The "during and in relation to" language requires at least that the firearm " 'facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." Smith, 113 S.Ct. at 2059 (quoting United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985)). However, this requirement is satisfied if the firearm merely "emboldens," or lends courage to, the defendant "who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred." United States v. Morrow, 977 F.2d 222, 231 (6th Cir.1992) (en banc), cert. denied, 113 S.Ct. 2969 (1993); see also Warner, 10 F.3d at 1239 (holding we could not say that a gun found on a sofa in the living room of a coconspirator's apartment, which also contained drugs, did not "facilitate the conspiracy by emboldening the participants"); Blankenship, 954 F.2d at 1229 (holding there was sufficient evidence where defendant transported cocaine in truck that also contained loaded firearm). Furthermore,
 
 
 10
 [i]n cases involving firearms found on premises under the control of a drug offense offender, the courts have developed a "fortress analogy" theory, which holds that if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used "during and in relation to" a drug trafficking crime.
 
 
 11
 United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989) (holding that pistol found close to cash and rifle found next to window overlooking growing marijuana plants was sufficient evidence under fortress theory); see also Lloyd, 10 F.3d at 1212-13 (concluding "a loaded weapon in the hallway of the residence [where drug trafficking was occurring was] without question a weapon that a jury could reasonably conclude was used during and in relation to a drug trafficking crime"); United States v. Clark, 928 F.2d 733, 737 (6th Cir.) (per curiam) (holding where gun, cash, and cocaine were found together on bedroom mattress, there was sufficient evidence to infer that the gun was strategically and conveniently located for possible use during a drug transaction), cert. denied, 112 S.Ct. 144 and 240 (1991); Acosta-Cazares, 878 F.2d at 951-52.
 
 
 12
 In this case, the government's evidence demonstrated the necessary connection between the firearm and the drug conspiracy. The conspiracy count, to which defendant pled guilty, charged that it was part of the conspiracy that defendant would use his residence for the distribution of cocaine. All of the incriminating items seized by the police--cocaine, cash, pistol, drug paraphernalia--were found in defendant's bedroom. The pistol was placed on top of the safe where the cocaine packaged for sale and cash proceeds of cocaine sales were stored. A clip of ammunition was conveniently placed within arm's reach of the pistol. This evidence supports the inference that the conspiracy's distributions of cocaine were made from the safe, and the firearm, strategically placed atop the safe, would have emboldened defendant during the operation of the conspiracy. The pistol was readily available for a member of the conspiracy to protect himself or to protect the cash and cocaine at the time purchasers would exchange money for cocaine. Therefore, viewing the evidence in the light most favorable to the government, we conclude that the ready accessibility of the pistol and the proximity of the pistol to the cocaine, cash, and tools of drug distribution provided sufficient circumstantial evidence from which the district court could find beyond a reasonable doubt that the firearm was used "during and in relation to" the drug conspiracy.
 
 
 13
 Defendant's citation of United States v. Alvarez, 814 F.Supp. 908 (D.Idaho 1993), is unpersuasive. In that case, the district court granted a motion for judgment of acquittal, finding that the evidence that an unloaded .22 caliber pistol and cocaine were found in the same drawer in the defendant's bedroom was insufficient to support a Sec. 924(c) conviction. However, in Alvarez, unlike the present case, there was no ammunition readily available for use in the pistol, and therefore it could not be said that the pistol was positioned close to the cocaine in order to protect the cocaine or to embolden the defendant. In the present case, there was a magazine of ammunition found within arm's reach of the .32 caliber pistol, making the pistol readily available for such uses.
 
 
 14
 Defendant cites United States v. Derr, 990 F.2d 1330 (D.C.Cir.1993), for the proposition that the mere proximity of guns to drugs does not inevitably lead to the conclusion that the guns were used "during and in relation to" the drug crime. In that case, the firearm was found on top of a box containing drugs, but the firearm and the box were located in a closet secured by a padlock. The Derr court held that this scenario did not support an inference that the firearm was used to guard the drugs because the firearm, although located in close proximity to the drugs, was locked away in the closet and therefore not readily accessible and not strategically located for protection. Id. at 1338-39. Whatever the merits of the Derr decision may or may not be, the present case is quite dissimilar. The pistol was not locked away along with the drugs as it was in Derr, but rather was positioned on top of the safe containing the cash and cocaine, making the pistol readily accessible and strategically located for protection.
 
 III.
 
 15
 For the reasons stated, defendant's conviction is AFFIRMED.
 
 
 
 [1]
 Defendant did not stipulate to the facts concerning the placement and fit of the ammunition magazine. However, defendant did stipulate that a magazine containing five rounds of ammunition of the same caliber as the .32 Armi Tanfaglio was found in the bedroom. Defendant further stipulated that had Agent D'Alesio been called to testify, he would have testified that he found the magazine in plain view on the bedroom etagere located within approximately three feet of the pistol, and that the magazine fit the pistol. As discussed below, we must view the evidence in the light most favorable to the government, and therefore we accept Agent D'Alesio's stipulated testimony as true